WASSERMAN, TRUSTEE, APPELLEE, *v.* THE BUCKEYE UNION CASUALTY CO., APPELLANT.

[Cite as Wasserman v. Buckeye Union Cas. Co. (1972), 32 Ohio St. 2d 69.]

(No. 72-197—Decided December 6, 1972.)

*Mr. Frank Leonetti,* for appellee.
*Messrs. Kitchen, Messner & Leyshon* and *Mr. Charles W. Kitchen,* for appellant.

CORRIGAN, J.   The Court of Appeals based its reversal in the present case upon the alleged error that the trial court's charge to the jury as to what constitutes a lack of good faith was not a complete or correct statement of the law applicable to the facts in the case.   In its opinion, the court (29 Ohio App. 2d 7), at page 19, concluded:

"The court's charge to the jury, set out above, failed to afford the jury the aid it ought to have received from the court.   It had no special reference to the facts, circumstances and law in this case, and was merely a short state-

ment on the general subject of fraud and bad faith. The charge ought not only to be correct but to be so adapted to the case and so explicit as not to be misconstrued or misunderstood by the jury in the application of the law to the facts as they find them from the evidence. *Little Miami Rd. Co.* v. *Wetmore* (1869), 19 Ohio St. 110.''

The court concluded further that the charge was inadequate, specifically in that it was ''limited to bad faith in terms of fraud and deceit. It did not include the broader definition of lack of good faith of the majority view, and thus was not a complete statement of the law of good faith applicable to the facts in the present case.''

The Ohio law of the liability of an insurer to an insured, involving the recovery of a judgment in excess of its liability, was stated specifically by this court in *Hart* v. *Republic Mutual Ins. Co.* (1949), 152 Ohio St. 185, and *Slater* v. *Motorists Mutual Ins. Co.* (1962), 174 Ohio St. 148.

The syllabus in *Hart* reads:

''1. A liability insurance company which reserves the right to settle, as it deems expedient, any claim against its insured is not liable to the insured for negligence in settling or refusing to settle such a claim.

''2. Such company is liable to respond in damages to its insured if it fails to act in good faith with respect to the settlement of such a claim.''

That case involved refusal by the defendant insurance company to settle a claim within the limits of its liability to the insured under a policy of insurance, leading to a judgment for the plaintiff against the insured in excess of the insurer's coverage. The insurer's defense in justification of its conduct was that it believed there was no liability for the injuries sustained by the insured. Such a belief, the court said, ''may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor.''

This court has elaborated further on the concept of bad faith or lack of good faith in the *Slater* case, *supra.* Paragraphs one and two of the syllabus state:

"1. In an action by an insured against his insurer to recover the amount of a judgment rendered against him in a tort action in excess of the policy limit, such insured must allege and prove a lack of good faith on the part of the insurer either in negotiations respecting a settlement of the claim against the insured or in the conduct of the trial of the tort action on behalf of the insured.

"2. A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

The issue in *Slater* was whether the insurer's failure to make official disclosure of its maximum liability under the policy held by the insured, thus preventing settlement, amounted to bad faith. In holding that it did not, this court reaffirmed the view that "bad faith" was not merely negligence or bad judgment but the active and intentional purpose to mislead or breach a known duty.

In the instant case, the trial judge gave as his charge on "bad faith" paragraph two of the syllabus in *Slater, supra.* Insofar as the *Slater* case sets out the essential elements of "bad faith" as something more than mere negligence or bad judgment and implying a dishonest purpose, the charge was a correct and complete statement of the law.

Since there was sufficient evidence from the bartender and the porter to raise a question as to the cause of Betty Coventry's injuries, appellant's decision to appeal cannot be classified as capricious or arbitrary. The failure to file a bill of exceptions is no more than negligent conduct which does not constitute "bad faith" under the standards set by this court.

Although not included or mentioned in the syllabus or opinion of the Court of Appeals, the journal entry in that court also finds Assignment of Error (4), "Misconduct of

counsel for the prevailing party," to be well taken and disposes of it in these words:

"The remarks of counsel for defendant-appellee in closing argument insinuating that counsel for plaintiff-appellant was the sole person who was interested in the plaintiff's action or who would benefit from a verdict for plaintiff were irrelevant and prejudicial. The trial court committed prejudicial error in not sustaining objection to them."

After a careful reading and consideration of the record before us, we disagree. Counsel for appellee was a witness for plaintiff at the trial, and, as such, he was subject to cross-examination and to the same tests for credibility as any other witness. Under the circumstances, we do not find the remarks of counsel for appellant in closing argument to constitute misconduct, or to be prejudicial.

The judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is affirmed.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STERN and LEACH, JJ., concur.

BROWN, J., dissents.