MILLER, EXRX., *v.* KRONK, ADMX.; PUBLIC LIBRARY OF COLUMBUS AND FRANKLIN COUNTY, APPELLANT; BUCKEYE UNION INSURANCE COMPANY, APPELLEE.

(No. 86AP-705—Decided March 31, 1987.)

*Brownfield, Cramer & Lewis* and *James W. Lewis,* for appellant.

*Emens, Hurd, Kegler & Ritter, S. Noel Melvin* and *Richard H. Vetter,* for appellee.

REILLY, J. This is an appeal by defendant and third-party plaintiff, the Public Library of Columbus and Franklin County (hereinafter "the Library"), from the decision and order granting third-party defendant's motion to dismiss the third-party complaint and for final judgment pursuant to Civ. R. 50(A)(1).

An automobile accident happened, which involved cars driven by Donald E. Miller and Julia Schaub, when Ms. Schaub drove left of center resulting in the death of both drivers. Plaintiff Mabel N. Miller, Executrix of the Estate of her late husband, Donald E. Miller, filed a wrongful death action in the Franklin County Common Pleas Court naming as defendants M. L. Kronk, Administratrix of the Estate of Julia Schaub, Otterbein College and

the Library. The Library answered denying that Julia Schaub was its employee and asserted that she was employed by defendant Otterbein College. Otterbein moved for summary judgment. The trial court sustained the motion, finding that Julia Schaub was not an employee of co-defendant Otterbein College. The Library amended its answer asserting the defense of sovereign immunity.

This court affirmed the summary judgment in favor of defendant Otterbein, leaving Kronk and the Library as the remaining defendants. This court further found that Schaub was an employee of the Library and was acting in the course and scope of her employment at the time of the accident.

Subsequently, plaintiff Miller filed a motion for summary judgment. The Library also filed a motion for summary judgment claiming there was no liability under the doctrine of sovereign immunity. The Library's motion was sustained by the trial court, which found that the Library was entitled to sovereign immunity, but denied plaintiff Miller's motion for summary judgment. Plaintiff Miller appealed the judgment to this court, which found that the record was incomplete concerning the issue of whether the Library's function was governmental or proprietary for purposes of determining the applicability of the defense of sovereign immunity.

The Library filed a second motion for summary judgment reasserting the defense of sovereign immunity against plaintiff's claim. The motion was filed by counsel assigned to the defense of the Library by its liability insurer, appellee Buckeye Union Insurance Company (hereinafter "Buckeye Union"). The trial court overruled the Library's motion for summary judgment based on *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228, and

*Carbone* v. *Overfield* (1983), 6 Ohio St. 3d 212, 6 OBR 264, 451 N.E. 2d 1229, and sustained plaintiff Miller's motion for summary judgment holding that the Library was liable to plaintiff Miller as a matter of law under the doctrine of *respondeat superior.*

Special counsel to the prosecuting attorney, the Library's statutory counsel, entered an appearance on the Library's behalf and moved for leave to file a third-party complaint against Buckeye Union. Counsel on behalf of Buckeye Union filed a memorandum contra the Library's motion; at the same time, Buckeye Union offered to pay the policy limits of $250,000 which was subsequently paid into the Probate Court of Franklin County.

The trial court granted the Library's motion to file a third-party complaint against Buckeye Union. The Library filed its third-party complaint asserting a claim of bad faith. The Library's third-party complaint was set for a jury trial on June 11, 1986. At the conclusion of the opening statement of the Library's counsel, Buckeye Union moved for a directed verdict pursuant to Civ. R. 50(A)(1). The trial court heard arguments of counsel and the proffers of the Library's counsel and then granted the motion.

The Library filed its notice of appeal and advances the following assignment of error:

"The trial court erred in sustaining third-party defendant's motion for a directed verdict at the close of third-party plaintiff's opening statement."

Determinative to the disposition of this case is whether the allegations in the Library's pleadings, opening statements and proffer of addenda to plaintiff's opening statement, when construed most favorably to plaintiff, provide a basis for an actionable claim of bad faith.

The Supreme Court in *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174

Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45, set forth the applicable law for a civil action based on the tort of bad faith. The court stated in paragraphs one and two of the syllabus:

"1. In an action by an insured against his insurer to recover the amount of a judgment rendered against him in a tort action in excess of the policy limit, such insured must allege and prove a lack of good faith on the part of the insurer either in negotiations respecting a settlement of the claim against the insured or in the conduct of the trial of the tort action on behalf of the insured.

"2. A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

As noted in the *Slater* case, a claim of bad faith will not be actionable upon a mere showing that the insurer exercised poor judgment or was negligent in failing to settle a claim at or below an insured's coverage policy limits. Bad faith involves a conscious or deliberate wrongdoing with an actual intent to mislead, deceive, or breach a known duty. See *Wasserman* v. *Buckeye Union Cas. Co.* (1972), 32 Ohio St. 2d 69, 73, 61 O.O. 2d 326, 328, 290 N.E. 2d 837, 840.

The Library has not cited any case law in support of its position that the failure of an insurer to initiate settlement negotiations, where none had previously been instituted by the party bringing the action, amounts to bad faith. Moreover, in situations where an insurer has refused an offer to settle a claim within the insured's policy limits,

the courts have found that there is no bad faith where the insurer has a justifiable belief that there was no liability. See *Wasserman, supra,* at 72, 61 O.O. 2d at 327-328, 290 N.E. 2d at 839-840, citing *Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E. 2d 347.

In the more recent case of *Spitler* v. *State Auto. Mut.* (1980), 61 Ohio St. 2d 242, 15 O.O. 3d 255, 400 N.E. 2d 889, the court relied upon the definition of bad faith, as set forth in the *Wasserman* and *Slater* decisions. Many of the allegations which the Library contends constituted a showing of bad faith were similarly raised in the *Spitler* case, wherein the Supreme Court rejected the administrator's allegations that the insurance carrier's alleged failure to adequately represent and protect the interests of an estate constituted bad faith.

The Library contends that Buckeye Union engaged in a calculated course of conduct which, when viewed in its totality, indicates that Buckeye Union had one overriding and ulterior motive, which was to protect its own economic interest to the detriment and expense of its insured, the Library. Nevertheless, bad faith has not been defined as broadly in scope as the Library advocates. See *Spitler, supra,* and *Wasserman, supra.* As the court noted in *Wasserman:* " * * * 'bad faith' [is] * * * not merely negligence or bad judgment but the active and intentional purpose to mislead or breach a known duty." *Id.* at 73, 61 O.O. 2d at 328, 290 N.E. 2d at 840.

In construing the allegations in the Library's third-party complaint most strongly in its favor, the opening statements of counsel and accompanying proffers, this court finds that the Library has failed to show any particular act or omission or course of conduct which imported a dishonest purpose, conscious wrongdoing, or a

breach of a known duty through some ulterior motive or ill will, involving fraud. The Library contends that from September 5, 1979, when the trial court sustained Otterbein's motion for summary judgment, until January 4, 1980, when Buckeye Union amended the Library's answer to assert the defense of sovereign immunity, Buckeye Union should have initiated settlement proceedings. The Library, however, has not indicated that plaintiff Miller would have settled the case within policy limits. Furthermore, during that time span, sovereign immunity was still a viable defense.

The Library also maintains that a settlement offer should have been initiated within policy limits since it was clear that in a series of Supreme Court decisions prior to the decision in *Enghauser, supra,* the doctrine of sovereign immunity was being eroded away. In any event, there has been no showing that Miller would have accepted any settlement offer after the case of *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749, but prior to the decision in *Enghauser.*

Shortly after the decision in *Enghauser,* Buckeye Union offered the court the full policy limits of $250,000. The fact that Buckeye Union may have previously written other public libraries informing them that it was in their best interest to increase their policy limits due to the fact that the continuing viability of the sovereign immunity doctrine was in question is not material, since the Library concedes that during that time period it was no longer insured by Buckeye Union.

The Library also asserts that Buckeye Union's failure to investigate the claim or to communicate or cooperate in defending the action was conduct constituting bad faith. As noted above, the court in *Spitler* found that such allegations were insufficient to raise the issue of bad faith.

The Library further contends that Buckeye Union's failure to investigate the claim constituted bad faith. It is undisputed that Julia Schaub was liable in driving her car left of center. Her personal insurance company paid the policy limits. Buckeye Union presented two defenses, which, if successful, would have shielded the Library from liability even though Schaub was at fault. Moreover, from the outset, the Library was on notice that a successful action could exceed policy limits and that it had a right to participate in the defense. Hence, the failure to conduct further investigations does not raise the issue of bad faith.

In sum, the Library has not alleged in its pleadings, in opening statements or in the evidence proffered, that Buckeye Union ever received a demand to settle within policy limits; that a settlement offer was conveyed but was countered by an unreasonable offer; that Buckeye Union rejected advice from counsel to settle within policy limits based upon an ulterior motive; or that Buckeye Union refused to discuss a request from the Library to settle within policy limits, or rejected the possibility of a contribution on the part of defendant Library.

Construing the pleadings, opening statements and the evidence proffered most favorably to the Library, reasonable minds could only conclude that Buckeye Union did not lack good faith concerning plaintiff Miller's claim. Settlement negotiations were never initiated by plaintiff Miller and, considering the facts of this case, Buckeye Union had no duty to initiate negotiations.

Thus, construing all inferences most favorably to plaintiff, reasonable minds could reach but one conclusion: that Buckeye Union did not act in bad faith in its representation of the Library.

For the foregoing reasons, the Library's single assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P.J., and McCORMAC, J., concur.