MORRELL CONSTRUCTION, INC., an Idaho corporation, Plaintiff–Appellant,

v.

HOME INSURANCE COMPANY, a foreign corporation, Defendant–Appellee.

No. 88–4446.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1990.

Decided Nov. 30, 1990.

Darrel W. Aherin, Aherin & Rice, Lewiston, Idaho, for plaintiff-appellant.

Scott D. Hess, Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, Idaho, for defendant-appellee.

Before KOELSCH, BROWNING and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

In *Morrell Constr., Inc. v. Home Ins. Co.*, 899 F.2d 875 (9th Cir.1990), Morrell appealed the district court's decision granting summary judgment in favor of Home Insurance Co. on Morrell's claim that Home Insurance exercised bad faith by refusing to investigate and pursue settlement negotiations before suit was filed against Morrell by a third party. Because the dispute involved issues of first impression under Idaho tort law, we certified the following two questions to the Idaho Supreme Court:

(1) Does Idaho's bad faith tort impose a noncontractual duty on insurers to investigate a claim before a third party files a suit?

(2) Does Idaho's bad faith tort impose a noncontractual duty on insurers to initiate settlement negotiations before a third party files a suit?

The Idaho Supreme Court determined that it was inappropriate to accept the questions because of that Court's crowded docket, and it rejected the certification of questions pursuant to Rule 12.1(c) of the Idaho Appellate Rules. *Morrell Constr., Inc. v. Home Ins. Co.*, Ref. No. 90S–79, Sup.Ct. No. 99215 (Idaho Supreme Court May 18, 1990) (unpublished). We must now resolve the questions according to our perception of Idaho law, *Morrell*, 899 F.2d at 878, and we affirm.

We set out the facts giving rise to this dispute in our previous decision. *See id.* at 876. We also traced the evolution of Idaho's bad faith cause of action, and we noted

that both commentators and courts from other states reached differing conclusions on the issues which we certified. Here, we re-trace Idaho law, we look at some of the arguments made by commentators and by other courts, and we conclude that the Idaho Supreme Court would not extend its bad faith cause of action to failures to investigate before a complaint is filed or to failures to pursue settlement negotiations before an injured party makes an offer to settle.

## I

The Supreme Court of Idaho first imposed tort liability on insurers who settle claims in bad faith in *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986). It explained that " 'insurance companies have a duty to act in good faith with their insureds, and that *this duty exists independent of the insurance contract and independent of statute.*' " *Id.* 730 P.2d at 1016 (quoting *Lipinski v. Title Ins. Co.*, 202 Mont. 1, 655 P.2d 970, 977 (1983)) (emphasis added in *White*). It noted that "[s]uch a duty is beyond that which the policy imposes by itself—the duty to defend, settle, and pay—but is a duty imposed by law on an insurer to act fairly and in good faith in discharging its contractual responsibilities." *Id.* "[T]his duty arises not only in the context of third party situations (actions brought as a result of the insurer's failure to settle the claims of third parties within the policy limits of the insured), but also in first party actions (when the insured is personally filing a claim for benefits against the insurer under the policy)." *Id.* The Idaho Supreme Court concluded that there exists a common law tort action "for an insurer's bad faith in settling the first party claims of its insured." *Id.* 730 P.2d at 1020.

Idaho based its tort action for an insurer's bad faith in settling first party claims on the special relationship between insurers and their insureds. *Id.* 730 P.2d at 1019. The court stressed that insurance policies are contracts of adhesion and that insureds generally lack bargaining power. *Id.* Suggesting that insurers owe insureds

some sort of a fiduciary duty, the court explained that insureds have a right to place trust and confidence in insurers. *Id.*

Two justices dissented in *White.* They maintained that the majority "failed to grasp [a] fundamental distinction between tort and contract law." *Id.* 730 P.2d at 1021 (Bakes, J., dissenting). They would have held that the "non-performance of contractual obligations does not give rise to an action in tort." *Id.*

Idaho's nascent bad faith tort was later extended to include negligent as well as intentional denials or delays in the payment of claims. *Reynolds v. American Hardware Mut. Ins. Co.*, 115 Idaho 362, 766 P.2d 1243, 1246 (1988). The Idaho Supreme Court explained that it based its holding in *Reynolds* on the reasoning in *White:*

> [W]e continue to recognize the "special relationship which exists between insurer and insured ... which requires that the parties deal with each other fairly, honestly, and in good faith," and we acknowledge the disparity in bargaining power between the insurer and insured, and the destructive effects that a negligent settlement practice can have upon ordinary citizens caught by the debilitating force of a sudden catastrophic loss.

*Id.* (citation omitted). Once again, two justices dissented. They argued that there was no relationship between the insured and the insurer which could create a duty in tort. *Id.* 730 P.2d at 1250 (Bakes, J., dissenting).

The Idaho Supreme Court recently limited its developing cause of action for bad faith in *Hettwer v. Farmers Ins. Co.*, 797 P.2d 81 (Idaho 1990), *reh'g denied* (Sept. 25, 1990) 1990 WL 66512 (1990 Ida. LEXIS 162). There the Idaho Court held that injured third parties cannot maintain a bad faith cause of action against an insured's insurer. The Court further held that the third party's appeal was unreasonable and without foundation and awarded costs and attorneys' fees to the insurance company.

■ No Idaho court has addressed whether a common law tort action for bad faith exists for an insurer's failure to inves-

tigate claims of third parties against insureds before suit is filed. In *Reynolds,* the Idaho Supreme Court viewed the insured's complaint as "sounding in tort for negligent fulfillment of an obligation to reasonably investigate and bring an insurance claim to a conclusion...." 766 P.2d at 1247. However, *Reynolds* involved a first party action. Just because Idaho recognizes a tort duty to investigate a first party claim by an insured does not mean that Idaho would necessarily impose a similar non-contractual duty on insurers to investigate a third party claim before suit is filed.

Similarly, Idaho courts have not decided whether insurers have a duty to initiate settlement negotiations before suit is filed. In *Openshaw v. Allstate Ins. Co.,* 94 Idaho 192, 484 P.2d 1032 (1971), the Idaho Supreme Court suggested without deciding that insurers have a duty to settle a claim before suit is filed when an injured third party initiates settlement negotiations. In this case, however, the injured third party did not make a settlement offer prior to filing suit. Home Insurance can only be liable for bad faith, then, if Idaho tort law imposes a duty on insurers to initiate settlement negotiations before suit is filed.

## II

In other states, courts initially recognized the bad faith tort in the context of third party insurance cases, where insurers had a contractual duty to defend insureds against third party claims. *See* Note, *Tort Remedies for Breach of Contract: The Expansion of Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing into the Commercial Realm,* 86 Colum.L.Rev. 377, 382 (1986). These courts noted that the interests of insureds and their insurers conflicted when injured third parties asked for damages that exceeded the limit of an insured's policy. One scholar explains:

> If, for example, the policy limit per person is $10,000 and the claimant, having sued for $100,000 or more, offers to settle for $10,000, accepting the offer would ordinarily best serve the insured's inter-

ests because the settlement would foreclose the risk of a judgment against the insured in excess of policy limits. On the other hand, apart from potential liability for noncompliance with a legal duty to settle, refusal to settle would ordinarily best serve the company's interests because the defense might be successful at trial and, even if the defense loses, the company's only added loss from unsuccessful litigation would be the cost of defense.

R. Keeton, *Insurance Law* § 7.8(a) (1971).

■ Although *White* and *Reynolds* involved allegations against insurers for bad faith in settling the first party claims of insureds concerning fire damage, we believe that Idaho courts would recognize a cause of action for bad faith by insurers in settling third party claims as well. As conceded by the insurer and noted by the Idaho Supreme Court in *White,* "an action sounding in tort may be applicable in third party situations due to the fiduciary relationship established when the insurer assumes control of the litigation, including the power to settle...." 730 P.2d at 1019. However, even if Idaho courts would entertain actions by insureds for an insurer's bad faith in settling third party claims, that tort duty does not necessarily encompass a duty to investigate before suit is filed or a duty to initiate settlement negotiations before suit is filed.

### A

■ Some jurisdictions impose a duty on insurers to investigate a third party's claim before a complaint is filed, *see, e.g., Griggs v. Bertram,* 88 N.J. 347, 443 A.2d 163, 168–170 (1982), but others do not, *see, e.g., Ramsey v. Interstate Insurors, Inc.,* 89 N.C.App. 98, 365 S.E.2d 172, 175, *review denied,* 322 N.C. 607, 370 S.E.2d 248 (1988). *See generally,* 7C J. Appleman, *Insurance Law and Practice* § 4712, at 480 (1979).

Explaining its decision to extend an insurer's duties to encompass a pre-litigation duty to investigate, the *Griggs* court stated:

> The[ ] obligations upon the insured to turn over claims promptly, to abstain

from any conduct that might interfere with the contractual rights of the insurers and to affirmatively cooperate with the insurance carrier, in turn, impose commensurate duties upon the insurer. Upon receiving notice of a possible claim against its insured, an insurer has the duty to investigate the matter within a reasonable time.

443 A.2d at 170. In contrast, the *Ramsey* court concluded "in the absence of any evidence that the policy so required, we reject the Ramseys' contentions that the insurer had a duty to investigate the accident and negotiate a settlement without any suit having been filed...." 365 S.E.2d at 175.

We think that Idaho would be more likely to adopt the *Ramsey* approach than the *Griggs* view. Simply stated, if Morrell wanted its insurer to investigate third party claims before a complaint was filed, it could have bargained for a different insurance policy, most likely with a higher premium. Instead, it purchased a policy which explicitly left investigations to the discretion of its insurer. We decline to rewrite the parties' insurance policy via tort law to impose an obligation on an insurer to investigate a claim before a third party files suit.

We have not overlooked the special relationship between insurers and insureds in reaching our conclusion. We realize that Idaho courts consider insurance policies issued to commercial enterprises, like the beauty college in *White* and the convenience store in *Reynolds,* to be contracts of adhesion. Idaho courts recognize an inherent disparity in bargaining power between insurers and insureds. *See Reynolds,* 766 P.2d at 1246. When insurers fail to investigate claims of third parties, insureds with policies like Morrell's must bear the costs of investigation themselves, despite the fact that they purchased liability insurance primarily to avoid such expenses.

However, we see little reason to impose a judicially-created contract term here which would require insurers to investigate third party claims before suit is filed. We are in no position to guess what terms the parties would have agreed to if they had equal bargaining power. Nor do we think insurers should have to waste their time investigating third party losses which may never give rise to legal action. A contrary holding would increase the cost of insurance premiums and would force all Idaho insurance purchasers to pay for coverage which they may not need or want. We choose not to extend Idaho's bad faith cause of action.

## B

■ As with the pre-litigation duty to investigate, courts and commentators disagree about whether insurers owe a duty to insureds to initiate settlement negotiations with injured third parties. Keeton and Appleman argue that insurers should have a duty to explore settlement possibilities, even when no action has been brought by a third party against its insured. R. Keeton & A. Widiss, *Insurance Law* § 7.8(c), at 889–90 (1988); 7C J. Appleman, *Insurance Law and Practice* § 4711, at 377 (1979). However, Couch contends that there is no liability for bad faith in the absence of an offer to settle by the person claiming against the insured. 14 *Couch on Insurance 2d* § 51:17, at 406 (1982).

Courts which have directly addressed the issue have split as well. *Cf. Alt v. American Family Mut. Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706, 713 (1976) (duty on insurer to initiate settlement negotiations), with *Miller v. Kronk,* 35 Ohio App.3d 103, 519 N.E.2d 856, 858 (1987) (no duty on insurer to initiate settlement negotiations). The *Alt* court explained:

"[I]t would be unrealistic to believe that ... an offer is a prerequisite for finding the insurer to have acted other than in good faith....

We ... hold that an insurer ... has a positive fiduciary duty to take the initiative, and attempt to negotiate a settlement within the policy coverage. Any doubt as to the existence of an opportunity to settle within the face amount of the coverage ... must be resolved in favor of the insured unless the insurer, by some affirmative evidence, demonstrates there was not only no realistic possibility

of settlement within policy limits, but also that the insured would not have contributed to whatever settlement figure above that sum might have been available."

*Alt*, 237 N.W.2d at 713 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 N.J. 474, 493, 496, 323 A.2d 495, 505, 507 (1974)). Morrell points out that Home's failure to initiate settlement negotiations subjected Morrell to substantial pre-litigation expenses, including damage to its business reputation caused by the third party's substantial outstanding claim.

While it may make some sense to impose an obligation on insurers to initiate settlement negotiations in certain third party situations, we decline to hold that the Idaho Supreme Court would impose such a tort duty on all insurers. As we explained earlier, if Morrell wanted its insurer to investigate third party claims before the third parties filed complaints, Morrell should have obtained a different insurance policy.

### III

We conclude that the Idaho Supreme Court would not extend its bad faith cause of action to encompass failures to investigate or failures to initiate settlement negotiations before suit is filed. There being no cause of action stated, there is no need to address plaintiff's arguments regarding material issues of fact or the application of standards appellant contends are implied in the Idaho insurance statutes.

AFFIRMED.