OPINION
Defendant-Appellant, Steven G. Jarrells, appeals from his conviction of two counts of conspiracy to commit murder and the resulting nine (9) year sentence.
Prior to November 9, 1998, Appellant approached a co-worker, Chad Dunlap, and inquired about whether Dunlap knew of anyone who could murder Appellant's ex-girlfriend, Melissa Epperson. The reason for the desire to have Epperson murdered was that Appellant and Epperson were parents of a son and Epperson apparently planned to move out of state, taking the son with her.
Following the conversation, Dunlap contacted Detective Sergeant Dennis White of the Auglaize County Sheriff's Department. Detective White then arranged for Dunlap to record a conversation between Dunlap and Appellant. During the recorded conversation between Dunlap and Appellant, Appellant was informed that Dunlap had found someone to kill Epperson, the hit-man would need one hundred dollars ($100.00) as a retainer fee, and that Appellant was to meet the hit-man at the southbound rest area on I-75, just north of Wapakoneta, Ohio, at 7:00 p.m. on the evening of November 9, 1998.
On November 9, 1998, Appellant appeared at the rest area as previously arranged. The Auglaize County Sheriff's Department had set up visual and audio surveillance and enlisted the services of Mark Ernst, Patrolman for St. Mary's police Department, to play the role of the hit-man. At the rest area, Appellant explained to Patrolman Ernst how he wanted Epperson killed, why, how it could be covered up, and what Appellant planned to do when questioned. Appellant provided Patrolman Ernst with a hand-drawn map of the area where Epperson lived, they discussed the time that the murder should occur, and Appellant provided a photograph of the intended victim. Appellant also gave Patrolman Ernst a one hundred dollar ($100.00) bill.
Prior to concluding the meeting, Patrolman Ernst instructed Appellant that after the meeting was over Appellant would be unable to contact the "hit-man" again. Appellant was informed that when he left the rest area, the murder was going to occur. Appellant did not equivocate on his original request to have Epperson killed. Patrolman Ernst left the rest area. Appellant also left the rest area and was shortly thereafter stopped and taken into custody by Sergeant White.
The Auglaize County Grand Jury indicted Appellant on two (2) counts of Conspiracy to Commit Murder; Count One, indicted under R.C. § 2923.01(A)(1)/2923.02(A), and Count Two, indicted under R.C. § 2923.01(A)(2)/2923.02(A). The indictment was filed on November 23, 1998.
On April 13, 1999, a trial on both counts commenced. On April 15, 1999, the jury returned verdicts of guilty as to both counts. On June 3, 1999, the trial court merged the two counts and sentenced Appellant on Count One only. Appellant was sentenced to a term of incarceration of nine (9) years.
It is from the convictions and sentence that Appellant now appeals, prosecuting four assignments of error.
 Assignment of Error Number One The Trial Court abused its discretion by limiting cross-examination of State's witnesses as to the Defendant-Appellant's potential defense of abandonment or renunciation.
We first note that in contravention of App.R. 16(A)(7) and Loc.App.R. 11(A) and (B), Appellant does not support this assignment of error with any specific argument or reference to the record and/or facts, except with a blanket assertion that he attempted to establish facts which would tend to show that it was his intention to abandon or to renounce the conspiracy with which he was charged. (Appellant's Brief, pg. 5). Appellant further asserts generally that he attempted to lay the ground work for this defense through the cross-examination of the State's witnesses and that the trial court "unfairly and prejudicially" limited the Defendant-Appellant's cross examination so as to make a presentation of his defense impossible or at least very difficult. (Appellant's Brief, pgs. 5-6). Notwithstanding these infirmities, we elect to consider the assignment of error.
Assuming arguendo that the trial court did impermissibly limit Appellant's right to cross examine the State's witnesses concerning abandonment or renunciation of the conspiracy, a thorough review of the transcript reveals that Appellant wholly failed to raise the alleged error with the trial court. It is well established law that a failure to raise an issue with the trial court, e.g. object, "constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood
(1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus; State v.Ballew (1996), 76 Ohio St.3d 244, 254, 667 N.E.2d 369. Appellant's failure to somehow bring the alleged error to the attention of the trial court therefore waives the right to appeal the issue. We may not reverse absent plain error. Crim.R. 52(B);State v. Long (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804. In order to find plain error, this Court must be able to conclude that but for the limiting of Appellant's right to cross examination, the outcome of the trial would clearly have been different. Long, supra, at 97, 372 N.E.2d 804. Such a standard presupposes however that an error occurred.
Because Appellant has failed to direct us to those portions of the record that support his general argument, this Court is left to search the record for those areas where the error claimed may have occurred. A thorough review of defense counsel's cross-examinations of Patrolman Mark Ernst and Detective Dennis White, "the two law enforcement officers who were the primary complaining witnesses against [Appellant]," reveals numerous objections by the Prosecutor, followed generally by sidebars. The record further reveals that an overwhelming majority of the Prosecutor's objections were sustained. It follows then that in order to conclude the trial court somehow impermissibly limited Appellant's right to cross-examine these particular witness, absent a specific ruling, objection or colloquy to that effect, the trial court must have erroneously granted some or all of the Prosecutor's objections and, as a result, Appellant must have been precluded from fully and fairly cross-examining Patrolman Ernst and Detective White.
Appellant has failed to direct us to even a single objection that was erroneously sustained. Further, our analysis of the record herein leads to the conclusion that the trial court correctly sustained the Prosecutor's numerous objections. The right to fully and fairly cross-examine a witness certainly does not require the trial court or prosecutor to ignore the rules of evidence.
Because the trial court did not error in sustaining the Prosecutor's objections and because the record is completely devoid of any indication that the trial court somehow impermissibly limited Appellant's right to cross-examine the State's witnesses, there is no plain error for this Court to consider. Therefore, we hold that Appellant's first assignment of error is without merit.
 Assignment of Error Number Two The Trial Court erred in declining to give an instruction on renunciation or abandonment when requested by the Defendant-Appellant.
The purpose of instructions by the court to the jury is not to serve the tactical purposes of either party. The trial court is to instruct the jury by clearly and concisely stating the principles of law necessary to allow for a fair verdict and the administration of justice, Pickering v. Cirell (1955), 163 Ohio St. 1,125 N.E.2d 185; Cleveland Elec. Illum. Co. v. Astorhurst
(1985), 18 Ohio St.3d 268, 480 N.E.2d 794, and the instructions should pertain to the circumstances of the case and be so given as to secure the just consideration and judgment of the jury upon the points at issue. Wasserman v. Buckeye Union Casualty Co. (1972),29 Ohio App.2d 7, 277 N.E.2d 569, reversed on other grounds (1972), 32 Ohio St.2d 69, 290 N.E.2d 837.
In a criminal trial, the defendant is entitled to total and accurate instructions on all issues raised by the evidence. Therefore, after arguments are completed, a trial court must fully and completely give the jury all instructions that are relevant and necessary for the jury to weigh the evidence adduced and then discharge its duty as the fact finder. State v. Comen (1990),50 Ohio St.3d 206, 553 N.E.2d 640. Instructions not implicated by the facts of a case need not be given. See, e.g., State v. Scott
(1986), 26 Ohio St.3d 92, 497 N.E.2d 55, cert. denied (1986),480 U.S. 923, 94 L.Ed.2d 699, 107 S.Ct. 1386, reh. denied (1986)481 U.S. 1034, 95 L.Ed.2d 538, 107 S.Ct. 1966; State v. Cron (1967),14 Ohio App.2d 76, 236 N.E.2d 671. When a defense has been raised and is supported by evidence, the trial court errs in refusing to instruct the jury on the implicated defense. Finally, a reviewing court must consider the whole charge as given rather than separate portions of a charge alleged to be erroneous. State v. Grambo
(1947), 82 Ohio App. 473, 75 N.E.2d 826.
In the case sub judice, Appellant's trial counsel essentially requested that the trial court instruct the jury on the affirmative defenses of abandonment and renunciation, even though Appellant did not assert the defenses at trial. That is, Appellant did not argue the defenses of abandonment and renunciation or request that the court "instruct" on the defenses, rather, Appellant requested that the trial court "define" the defenses so that the jury would be aware of their possible existence and perhaps conclude that the State somehow precluded the possibility of the affirmative defenses occurring. It seems Appellant believed that the State, by arresting Appellant shortly after the encounter with Patrolman Ernst, somehow intended to prevent the defendant from abandoning his intent to have his ex-girlfriend murdered. In other words, Appellant argued before the trial court that the Jury should have been able to consider the assertion that if the State of Ohio had waited to arrest Appellant, Appellant might have changed his mind.
In denying the requested instruction, the trial court concluded as follows:
 The court finds that the instruction as requested would have the Court instruct the Jury about an affirmative defense without an explanation of the affirmative defense, — how the affirmative defense worked, what the burden of proof was, what must be shown, to what degree it must be shown, by whom it must be shown. To give the definitions of abandonment and renunciation when the Defendant is not asserting the defenses of abandonment and renunciation is to invite confusion and error, and the Court believes that the instruction must not be given * * *
 The Court believes that purpose is adequately defined in the proposed instruction * * * (Transcript, pgs. 649-650).
We agree with the trial court that the instructions proposed by Appellant would have required the court to partially instruct the jury on affirmative defenses that were neither argued by Appellant nor implicated by the evidence. Such instructions would have served only to confuse the jury.
The crux of Appellant's argument at trial was that he lacked the intent necessary to be guilty of the crimes for which he was charged. Appellant argued that by making the jury aware of the existence of the affirmative defenses, they would be better able to determine if the requisite intent was present. In essence, Appellant asserted that the trial court's instructions concerning "purpose" were somehow inadequate or incomplete without the additional instructions concerning renunciation and abandonment. A review of the transcript reveals that the trial court correctly and completely instructed the jury on the element of "purpose." (Transcript, pg. 689). A trial court may properly refuse to give a requested special instruction where the propositions of the requested instruction are fully and fairly covered by the court in its general charge. State v. Barnd (1993), 85 Ohio App.3d 254,259, 619 N.E.2d 518, 520, citing Rice v. Cleveland (1944),144 Ohio St. 299, 304, 58 N.E.2d 768, 771. The instructions given by the trial court concerning the requisite intent sufficiently covered the issue. Accordingly, we hold that Appellant's second assignment of error is without merit.
 Assignment of Error Number Three The Defendant-Appellant was deprived of effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution by trial counsels errors occurring throughout the case.
The United States Supreme Court has concluded that the right to assistance of counsel is satisfied only by "effective" representation. McMann v. Richardson (1970), 397 U.S. 759, 771,90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773, fn. 14. A two-pronged test was set forth by the Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064,80 L.Ed.2d 674, 693, to determine whether an individual had effective assistance of counsel:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Under this two-pronged test a defendant must show that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and that "the deficient performance prejudiced the defense." Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Ohio has essentially adopted the Strickland analysis for determining whether counsel's performance was so defective as to require reversal of a conviction. See, State v. Smith (1985), 17 Ohio St.3d 98, 100,477 N.E.2d 1128, 1130. See, also, State v. Frazier (1991),61 Ohio St.3d 247, 253, 574 N.E.2d 483, 488.
In a claim of ineffective assistance of counsel, the burden is on appellant to prove that counsel's performance was deficient and that the deficient performance prejudiced the defense. The Supreme Court of Ohio has held that counsel's performance is deficient if it falls below the objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus. In order to show prejudice, the appellant must demonstrate that there exists a reasonable probability that were it not for counsel's poor performance, the outcome of the trial would have been different.Id. at paragraph three of the syllabus.
As cautioned in Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id., 466 U.S. at 689,104 S.Ct. at 2065, 80 L.Ed.2d at 694. Further, a reviewing court in Ohio must presume that "a properly licensed attorney" is competent to conduct a criminal defense. State v. Hamblin (1988),37 Ohio St.3d 153, 155-156, 524 N.E.2d 476, 478-480. Moreover, a reviewing court need not analyze strategy and tactical decisions exercised by defense counsel that are "well within the range of professionally reasonable judgment." Strickland, 466 U.S. at 699,104 S.Ct. at 2070, 80 L.Ed.2d at 701. The burden falls upon the appellant to "`overcome the presumption that, under the circumstances, the challenged action'" falls within the scope of reasonable trial strategy. Frazier, 61 Ohio St.3d at 253,574 N.E.2d at 488 quoting Strickland, 466 U.S. at 689,104 S.Ct. at 2065, 80 L.Ed.2d at 694-695. As stated by the court inStrickland, even professionally unreasonable errors by defense counsel do not violate the Sixth Amendment right to counsel absent an actual effect on the outcome of the trial. See, e.g., Bradley,42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379. Again, it is the appellant's burden to show that the verdict rendered would "`reasonably likely have been different absent the errors.'" Id. at 143, 538 N.E.2d at 380 quoting Strickland, 466 U.S. at 695-696,104 S.Ct. at 2068-2069, 80 L.Ed.2d at 699. Thus, the "benchmark" for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Frazier, 61 Ohio St.3d at 254, 574 N.E.2d at 489; see, also, Strickland, 466 U.S. at 697, 104 S.Ct. at 2069,80 L.Ed.2d at 699.
We will address appellant's specific allegations of ineffectiveness of counsel, mindful of the appropriate standards as reiterated, supra. Appellant first complains that he was deprived of effective assistance of counsel when his trial counsel "misread" the indictment. That is, trial counsel objected during opening argument by the State to the Prosecutor's statement that defendant had been charged with two (2) counts of Conspiracy. Trial counsel argued that he believed the defendant had been charged with one (1) count of Conspiracy and one (1) count of Complicity rather than two counts of Conspiracy. In fact, as indicated in the indictment and explained by the trial court, Defendant-Appellant was charged with two counts of Conspiracy; one count was brought under R.C. § 2923.01(A)(1) and the other count was brought under R.C. § 2923.01(A)(2).
Assuming arguendo that the misreading of the indictment was somehow "deficient performance" within the ambit of Strickland and its progeny, Appellant is still required to demonstrate that were it not for the misreading, the outcome of the trial would have been different. The record reveals the trial court took significant steps to ensure itself that counsel was adequately prepared for trial. (Transcript, pgs. 178-180). The record further indicates that throughout the trial the defense advanced was one of lack of requisite intent. Appellant elected to attack the elements of the crime charged rather than offer an excuse for the commission thereof. That such a defense may have been presented by calling different witnesses or cross-examining witnesses in a particular fashion does not overcome the presumption that the approach in fact taken was well within the scope of reasonable trial strategy. Further, the tactical decision to not call Appellant as a witness is one that this Court will not second-guess. On this record it is clear that defense counsel had sufficient knowledge of the facts and circumstances underlying the indictment and he was properly prepared for trial.
Appellant next complains that he was deprived of effective assistance because defense counsel developed no clear-cut plan of defense but, rather, waffled between arguing the defenses of renunciation and/or entrapment while not presenting evidence to support either. Again, the defense unequivocally advanced by Appellant at trial was one concerning the elements of the crime charged. The evidence adduced supports neither the defense of abandonment nor entrapment. That trial counsel allegedly failed to argue defenses and request instructions that are unsupported by the evidence is not a sufficient basis for concluding that the legal representation was ineffective. Similarly, that the defense in fact asserted may not be as cogent, clear or concise as desired by Appellant in retrospect does not support a claim for ineffective assistance.
We note that, assuming arguendo deficiencies in counsel's performance, in each of the above instances Appellant has wholly failed to demonstrate that absent the alleged deficiencies the outcome of the trial would have been different. The State offered overwhelming and virtually uncontradicted evidence of Appellant's guilt in the form of, inter alia, testimony, tape recordings and other physical evidence. As the United States Supreme Court stated in Michigan v. Tucker (1974), 417 U.S. 433, 446,94 S.Ct. 2357, 2364, 41 L.Ed.2d 182, "* * * the law does not require that a defendant receive a perfect trial, only a fair one * * *." See, also, State v. Fawn (1983), 12 Ohio App.3d 25, 28, 465 N.E.2d 896,900; Lutwak v. United States (1953), 344 U.S. 604, 619,73 S.Ct. 481, 490, 97 L.Ed. 593; State v. Dickerson (1907), 77 Ohio St. 34,82 N.E. 969; State v. Davis (1975), 44 Ohio App.2d 335,338 N.E.2d 793. Although the defendant's trial may not have been a perfect trial, it was certainly a fair trial, free from prejudicial error.
Finally, Appellant complains that trial counsel failed to "amend" the record so as to include the psychological evaluation conducted by Doctor Solomon Fulero. Appellant is correct in that the trial judge indicated to Mr. Poppe that the report had not been attached to the "Request to Submit Forensic Psychological Evaluation." (Transcript, pgs. 3-6). However, Appellant is incorrect in the assertion that the trial judge required defense counsel to amend his pleading and that counsel failed to do so. Appellant apparently missed the following colloquy:
* * *
 THE COURT: So if you want to get it[, the psychological evaluation,] to me, mark it as an exhibit or otherwise, get it to me so that I can review it. If you want to append it to the pleading I'll allow you to append it to the pleading.
* * *
 THE COURT: Now, Mr. Pierce, I've received this document Mr. Poppe just handed me. It appears to be a five (5) page report signed by Solomon M. Fulero who is apparently a Ph.D. and a J.D.
MR. PIERCE: Yes, Your Honor.
THE COURT: Any objection?
MR. PIERCE: No objection.
 THE COURT: Okay. So it will be appended to the Request to Submit Forensic Psychological Evaluation filed yesterday.
 Mr. Poppe, you intended to call a witness and you were starting to call that but I wanted to interrupt you to give me a chance to get me the document so I could have a chance to read it, so give me a second here. * * *(Transcript, pgs. 5-6, emphasis added).
Clearly, the record reveals that defense counsel provided the trial court with a copy of the psychological evaluation, the evaluation was appended to the motion without objection, and the court took the time to read the evaluation. Therefore, the psychological evaluation conducted by Solomon M. Fulero is a part of the record.
Following a thorough review of the entire record submitted to us on appeal, we note that Dr. Fulero's evaluation is absent. However, that a properly admitted psychological evaluation is somehow absent from the record on appeal certainly does not constitute grounds for concluding that trial counsel provided ineffective assistance at trial. Appellant's remedy for the likely inadvertent exclusion of the evaluation from the record is found in App.R. 9(E), which allows a party to dispute whether the record truly discloses what occurred in the trial court and secure correction of any omission. Appellant has elected not to avail himself of this option.
In our view, in light of the substantial evidence presented at trial, Appellant has failed to establish that his trial attorney's performance was in any respect professionally deficient and, if assuming counsel's performance was deficient, that the outcome of his trial would have been different but for the deficient performance. Thus, Appellant has failed to establish that he received ineffective assistance of counsel in this regard. Accordingly, Appellant's Third Assignment of Error is without merit.
 Assignment of Error Number Four The trial court erred and/or abused its discretion when it failed to follow the sentencing criteria set forth in Ohio Revised Code, Section 2929.13 and 2929.14, resulting in the Defendant-Appellant receiving a sentence which is excessive and disproportionate with his offense.
Appellant argues that he has an automatic right of appeal because his "sentence is contrary to law." This court's appellate review is limited by the dictates of R.C. § 2953.08. Section2953.08 provides, in relevant part, the following:
 (A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted or pleads guilty may appeal as a matter of right the sentence imposed upon the defendant on one or more of the following grounds:
* * *
(4) The sentence is contrary to law.
 (G)(1) The court hearing an appeal of a sentence under division (A) * * * of this section may increase, reduce, or otherwise modify a sentence that is appealed as being contrary to law or may vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds any of the following:
 (a) That the record does not support the sentence;
* * *
 (d) That the sentence is otherwise contrary to law.
In the recent case of State v. Martin (June 23, 1999), Crawford App. No. 3-98-31, unreported, we analyzed the Ohio felony sentencing statutes, the means of their fulfillment by the trial court, and the standard for appellate review in such sentences. There we held that it is the trial court's findings under R.C.2929.03, 2929.04, 2929.11, 2929.12, 2929.14 and 2929.19 that, in effect, determine a particular sentence and that a sentence unsupported by those findings is both incomplete and invalid. See, also, State v. Bonanno (June 23, 1999), Allen App. No. 1-98-59 and 1-98-60, unreported. We further held in Martin that the trial court must strictly comply with the relevant statutes by making such findings on the record at the sentencing hearing. That is, the trial court must clearly articulate its findings and, when required, state the particular reasons for doing so at the sentencing hearing. A mere recitation by the trial court that it has considered the matters required by the sentencing statutes will not suffice. In this case, the transcript of the sentencing hearing indicates the trial court made the requisite findings on the record at the sentencing hearing.
Appellant alleges that the trial court failed to follow the sentencing criteria set forth in the Ohio Revised Code and in particular Sections 2929.13 and 2929.14. Our analysis therefore focuses on those factors that the trial court was required to consider in arriving at the sentence imposed.
Appellant was charged and convicted of a felony of the first degree. Pursuant to R.C. § 2929.13(D), for a felony of the first degree, it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under § 2929.11 of the Revised Code. However, if after considering the recidivism and seriousness factors enumerated in R.C. § 2929.12 the sentencing court finds that community control sanctions would adequately punish the offender and protect the public from future crime and that such sanctions would not demean the seriousness of the offense, the court may impose community control sanctions. R.C. § 2929.13(D)(1) (2). In this case, the court found at the sentencing hearing that community control sanctions would demean the seriousness of the offense. (Transcript, pg. 69).
In arriving at the above determination, the sentencing court was required to make various findings on the record concerning the likelihood of recidivism by the offender and an assessment of the relative seriousness of the offense. With respect to those factors enumerated in R.C. § 2929.12(B) indicating that an offender's conduct is more serious than conduct normally constituting the offense, the sentencing court made the following findings:
* * *
 (2) The victim of the offense suffered serious * * * psychological * * * harm as a result of the offense.
 Defendant caused serious psychological harm to the victim. (Transcript, pg. 67).
* * *
 (6) The offender's relationship with the victim facilitated the offense.
 The relationship between the defendant and the victim facilitated the offense as ex-girlfriend and mother of his child. (Transcript, pg. 67).
With respect to those factors enumerated in R.C. § 2929.12(C) indicating that an offender's conduct is less serious than conduct normally constituting the offense, the sentencing court made the following finding on the record:
* * *
 (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
Defendant expected and knew indeed that physical harm to persons was to be expected to be caused by his conduct in hiring someone to kill his ex-girlfriend and mother of his child. (Transcript, pg. 67).
* * *
Consistent with R.C. § 2929.12(A)'s provision that the sentencing court may consider other relevant factors, the court considered that the crime was calculative in nature, that defendant had discussed the plan with various people over an extended period, and, that defendant attempted to justify his actions when he was arrested, as being indicative of more serious conduct. (Transcript, pg. 69). Based on the above factors, the sentencing court found that Appellant's conduct was "more serious than conduct normally constituting the offense." (Transcript, pg. 69).
With respect to those factors enumerated in R.C. § 2929.12(D) indicating that an offender is likely to commit future crimes, the sentencing court made the following findings on the record:
* * *
 (5) The offender shows no genuine remorse for the offense.
Defendant shows no remorse for the offense. (Transcript, pg. 67).
* * *
With respect to those factors enumerated in R.C. § 2929.12(E) indicating that an offender is not likely to commit future crimes, the sentencing court made the following findings on the record:
 (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 Defendant has no prior adjudication of delinquency. (Transcript, pg. 66).
 (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 Defendant has no history of criminal convictions. (Transcript, pg. 66).
* * *
(5) The offender shows genuine remorse for the offense.
 Defendant shows no remorse for the offense. "Specifically, I am finding that this Defendant has repeatedly lied concerning the offense, has not accepted responsibility concerning the offense, and shows no remorse for the offense." (Transcript, pg. 67).
Consistent with R.C. § 2929.12(A)'s provision that the sentencing court may consider other relevant factors, the court concluded defendant's continued yet denied obsession with the victim was indicative of a strong likelihood that defendant would commit future crimes. (Transcript, pgs. 67-68). Based on the above recidivism factors, the sentencing court found that the likelihood of Appellant committing future crimes was elevated. (Transcript, pg. 68).
Because the sentencing court concluded, after weighing the relevant recidivism and seriousness factors, that Appellant was likely to reoffend, his conduct was more serious than conduct normally constituting the offense, and that community control sanctions would demean the seriousness of the offense, the court was required to indulge the presumption that a prison term was necessary.
For a felony of the first degree, the basic prison term is between three (3) and ten (10) years. R.C. § 2929.14(A)(1). If a person convicted of a felony has not previously served a prison term, the sentencing court is required to impose the shortest prison term authorized for the offense, unless the court finds that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others. R.C. § 2929.14(B). In the present case, although Appellant had not previously served a prison term, the sentencing court found that "[t]o impose the minimum sentence would demean the seriousness of the offense. To impose any sentence other than the nine (9) years that I imposed would demean the seriousness of the offense in this case." (Transcript, pgs. 76-77).
Appellant makes the general assertion that "[u]pon review of all the factors present, the defendant-appellant believes that the nine (9) year sentence cannot be justified * * * Under the circumstances, and considering the statutory guidelines by which sentencing must occur, the sentence in this matter is excessive and is not proportionate with other offenses." (Appellant's Brief, pg. 19). We disagree.
The sentencing court made all of the requisite findings and the record before us supports those findings. There is nothing in the record to suggest that in light of the numerous factors considered by the sentencing court the nine (9) year sentence was not reasonably calculated to protect the public from future crime by Appellant and to punish Appellant. Therefore, we hold that the record before us supports the sentence imposed. Accordingly, Appellant's Fourth Assignment of Error is without merit.
Judgment affirmed.
HADLEY, P.J., and SHAW, J., concur.