Matthias, J.
 

 It is to be observed from tbe foregoing statement tbat the recovery of damages for tbe injuries sustained by tbe pedestrian, Scott, is sought from tbe owners of tbe truck upon tbe theory tbat tbe negligent operation of tbe truck was tbe proximate cause of tbe injuries complained of in tbat tbe manner of operation of tbe truck caused the automobile owned and operated by Brown to come into collision with pedestrian' Scott, and cause bis injury. Tbe theory upon which plaintiff seeks recovery is stated by bis counsel as follows:
 

 “Before tbe truck swerved to tbe left side of tbe road, there was no signal given of tbe driver’s intention so to do. At tbe time that tbe driver of tbe truck commenced to swerve to tbe left side of tbe road, tbe driver of tbe Buick car was within 15 feet of tbe rear of the truck, and bad previously sounded his horn as a signal of bis intention to pass tbe truck. Tbe driver of tbe Buick was driving at tbe rate of thirty miles an hour. "When tbe truck was on tbe right band side of tbe road, be speeded bis automobile up to 35 miles an hour in order to pass tbe truck. As be so speeded bis automobile to thirty-five miles an hour, tbe truck swerved to tbe left band side of tbe road blocking tbe path of tbe Buick. Tbe driver of tbe Buick was placed in an emergency. Tbe berm on tbe left band side was narrow. There was a precipice of 6 to 8 feet where the berm ended on tbe left band side of tbe road. Passing on tbe left band side of the road meant imminent danger to tbe driver of tbe Buick and possibly death. Tbe driver of tbe Buick was unable to stop bis car without going to tbe right side of tbe road. His only alternative in tbe emergency was bis endeavor to pass on tbe right band side of the road where be knew tbe berm
 
 *228
 
 was wide. Blocked in passing the truck on the left hand side of the road by the act of the driver of the truck, to save himself, the driver of the Buick endeavored to pass on the right hand side of the road. In doing so, he saw the pedestrian, Scott, and instantly drove his car into the rear right corner of the truck to avoid striking Scott. Hi's car swerved and Scott was struck by the right door handle of the passenger car receiving the injuries complained of.”
 

 The essential facts disclosed by the record are in dispute in only very minor details. Plaintiff’s case is in the main based upon the testimony of Brown, driver of the automobile. Put in narrative form and using substantially his language in answer to various questions, his testimony is in substance as follows:
 

 When I came within 40 or 50 feet back of the truck, it was on its own side of the road; I blowed my horn to start around him, speeded my car up a little to get around him, and when I got within around 15 feet of him, he started to come over on my side of the road. There wasn’t much berm on the left and I saw that I wasn’t going to have room enough to get around him, that he was taking all of my side of the road — that is, more of it than he was entitled to take — and the road being clear, I thought maybe I could get around on the right side of him, and I switched my car back right quick; and when I started to go around the right I saw this man, Mr. Scott, walking on the edge of the curb. I saw that I was going to hit him and in order to not hit him I throwed the end of my Buick into the back end of the truck. When the machine hit, it went around sideways, the rear end of it swerved around that way, and I believe it was the door on the (right) side of the ear that hit Mr. Scott. It knocked him to the side of the road over on the outside of the berm. I was traveling I would say around thirty. I did not receive any signal of any kind from the truck. When I started to go around the left, the trunk was over to the left
 
 *229
 
 enough that I could have gone around on the right if this man had not been walking there. The rear end of the truck was just about straddle of the line, the center of the highway, when I hit him. At the rate of speed I was going, I could not stop without going to the right of the truck. I did not know the truck was passing around Paul Scott at the time I attempted to go around to the left, and did not know he was walking along the highway until I attempted to go around the truck on the right. I was around 15 feet, maybe, 20, from the truck when I started to go around the left of it. I did not put on the brakes; I put on more power to go around him. After he shut my road off on the left, I attempted to go around on the right. Mr. Scott was walking on the west edge of the highway, the brick pavement. The truck pulled out to go around Mr. Scott; I could not see him then for the truck; it had the highway view shut off. The truck turned to the left to keep from hitting this Mr. Scott that was walking on the highway; it looked that way to me. I learned Scott was there when I started to go out to pass the truck on the right. I didn’t have no occasion to apply my brakes; the impact of the collision stopped me and turned me around.
 

 It is disclosed that the pavement, which was 20 feet in width, was wet from melting snow, and that there was an ice ridge at the edge of the pavement made by sweeping the snow off the pavement. Plaintiff Scott testified that he was walking on the pavement about 18 inches from its west edge. He did not notice either the truck or the automobile, and did not hear any horn. He remembers only that he was struck. He did not become conscious until after his removal to a hospital. The testimony of the driver of the truck and his helper was in practical accord with that of Brown.
 

 The question immediately arises upon a presentation of these facts: What wrongful act or careless action of the driver of the truck was the proximate cause
 
 *230
 
 of the injury to the pedestrian? Concededly the driver of the truck had commendably endeavored to protect the pedestrian by swerving the truck to the left, and thus avoided striking him. Now, apparently, that action is made the basis of recovery for injuries sustained by the pedestrian. The collision of Brown’s automobile with the truck, which caused the automobile to strike the pedestrian, was the immediate result of the action of Brown who, without using his brakes or decreasing his speed, switched his direction from the left to the right, attempting to pass the truck on the right side.
 

 A motion for a directed verdict at the close of plaintiff’s case was overruled. It was not renewed at the close of all the evidence, and the case was submitted to the jury upon certain requested instructions given before argument and a general charge which was clear and comprehensive, covering all the issues in the case. Upon this record the verdict of the jury in favor of the defendant should not be disturbed unless it is clear that the instructions requested by the plaintiff, which were refused, are such as clearly fall within the mandatory requirements of the statute with reference to instructions requested to be given before argument.
 

 Taking them up in their order: Plaintiff’s requested instruction No. 2 is as follows: “If, by the greater weight of the evidence or the probabilities, you find that the drivers of the truck owned and operated by the defendant, and the Buick car driven by Mr. D. W. Brown, that the drivers of each failed to exercise ordinary care and such failure proximately produced certain injuries to plaintiff, then I charge you that because you may find both drivers guilty of negligence, that is no excuse, in law, for the negligence of the driver of the truck, and it makes no difference, if you find both were guilty of negligence as indicated, that one was guilty of more lack of care than the other. ’ ’
 

 Although under the statute (Section 11420-1, Gen
 
 *231
 
 eral Code) a mandatory duty devolves upon the court to give an instruction requested in writing before argument which contains a correct statement of the law pertinent to the issues involved and applicable to the particular set of facts to which it is intended to apply, such instruction must state the law clearly and correctly and be complete in itself. The court may properly refuse to give requested instructions before argument which are indefinite, uncertain or ambiguous, or otherwise misleading. 39 Ohio Jurisprudence, 1031, 1035, 1036.
 

 The proposed instruction above quoted is not a clear, concise or complete proposition of law in concrete form applicable to the issues in this case. In the form presented, it would tend to confuse and mislead rather than aid and instruct the jury. It was properly rejected.
 

 Plaintiff’s requested instructions Nos. 5 and 6 are as follows: No. 5. “If, by the greater weight of the evidence, you find the employee of said defendant, The Hy-Grade Pood Products Corporation, failed to obey the statutory laws of Ohio, in failing to make sure that before turning, stopping or changing his course such movement could be made in safety and such failure proximately contributed to producing injuries to plaintiff, then I charge you that the defendant, The Hy-Grade Pood Products Corporation, was guilty of negligence as a matter of law.”
 

 No. 6. “If, by the greater weight of the evidence, you find that the employee of said defendant, The HyGrade Pood Corporation, failed to obey the statutory laws of Ohio in failing to cause signals to be made of his intention'to turn, stop or change his course in a way visible outside of his truck, and such failure proximately contributed to producing injury to plaintiff, then I charge you that the defendant, The Hy-Grade
 
 *232
 
 Food Products Corporation, was guilty of negligence as a matter of law.”
 

 These requested instructions were evidently based upon the provisions of Section 6310-22, General Code, which is as follows: ‘ ‘ Drivers of vehicles before turning, stopping or changing their course shall make sure such movement can be made in safety and shall cause signals to be made of their intention in a way visible outside the vehicle.” In our opinion, the only specific requirement of this section is that the driver shall cause a signal to be given of his intention before turning, stopping or changing his course. That is the only provision in the statute' that involves a specific requirement or directs the doing of a specific act.
 
 Swoboda
 
 v. Brown, 129 Ohio St., 512, 196 N. E., 274. It follows that the court was not in error in refusing to give requested instruction No. 5. In our opinion this provision of the statute has no application to the situation presented where an automobile or truck merely digresses in its course in passing a pedestrian on the highway moving in the same direction as the automobile or truck. The contrary view would seem to require an unreasonable construction and application of the statutory provision. Such deviation from the extreme right side of the highway can hardly be held to come within the terms “turning” or “changing their course” within the contemplation of the statute. Upon any theory of the plaintiff’s case as previously set forth, requests 5 and 6 were inapplicable under the pleadings and the proof. We are therefore not in agreement with the judgment of reversal by the Court of Appeals in the respects stated.
 

 The facts disclosed by the record, viewed in the aspect .most favorable to the plaintiff and in accord with plaintiff’s theory of this case, are far from convincing that any act or failure to act on the part of the driver of the truck was a proximate cause of the injury complained of. That would have fully war
 
 *233
 
 ranted the verdict and judgment. Upon the whole case, we are of the opinion that the judgment of the Court of Common Pleas should have been affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Day and Zimmerman, JJ., concur.