OPINION
{¶ 1} Plaintiff-Appellant/Cross-Appellee, Gordon Proctor, Director of the Ohio Department of Transportation ("ODOT"), appeals the judgment of the Allen County Court of Common Pleas entered on a jury verdict in an appropriation proceeding initiated against Defendant-Appellee/Cross-Appellant, The Kewpee, Inc., et al. ("Kewpee"). On appeal, ODOT contends that the trial court erred in declining to give its requested limiting instructions to the jury and in permitting a *Page 3 
leading question at trial. Additionally, Kewpee cross-appeals the trial court's denial of its motion for an award of attorneys' fees. On appeal, Kewpee asserts that it should be awarded attorneys' fees because ODOT acted in bad faith. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In 2006, as part of a road-widening project on Allentown Road in Lima, Ohio, ODOT attempted to purchase certain real property owned by Kewpee. The property ODOT sought to permanently acquire consisted of a 0.038 acre parcel of land, as well as a 0.099 acre temporary work easement. The property sought was a portion of a 1.09 acre parcel containing The Kewpee, a local fast food restaurant. When the parties were unable to reach an agreement for purchase of the property, ODOT initiated appropriation proceedings for the temporary and permanent taking of the property. ODOT proposed that Kewpee should be compensated in the amount of $13,582, which ODOT determined was the fair market value of the appropriated property, including any damages to the residue.
 {¶ 3} In October 2007, the case proceeded to trial and the following testimony was heard.
 {¶ 4} Kenneth Wilson, Kewpee's real estate appraiser, testified that he estimated the value of the Kewpee parcel using the "income approach"; that the income approach is "a method of value where we estimate the potential rent that the property could generate and we capitalize that rental income into a value *Page 4 
estimate" (trial tr., vol. I, pp. 223-224); that he elected to value the Kewpee parcel using the income approach because the restaurant enjoyed substantial gross sales; and, that the income approach formula is recognized in the real estate appraisal profession.
 {¶ 5} Wilson then proceeded to apply the income approach method in explaining his valuation of the Kewpee property. Wilson testified that the average gross income of The Kewpee restaurant in 2004, 2005, and 2006, was $2,600,000; that he multiplied the average gross income by 5% in order to estimate the potential rent of the real estate component, which was $130,000 per year; that, although the average capitalization rate of a fast food restaurant is between 6.6% and 8.75%, he believed that Kewpee should be capitalized at 10% because Kewpee was a local restaurant chain; that he divided the potential rent, $130,000, by 10%; and, accordingly, that he valued the Kewpee property before the taking at $1,300,000.
 {¶ 6} Wilson then explained how he valued the damages to the Kewpee property caused by the taking. Wilson testified that the land permanently appropriated was approximately eight feet wide and went across a row of parking spaces along the front of the Kewpee property; that approximately ten parking spaces would be eliminated as a result of the taking; that these eliminated parking spaces were more valuable than the others in the lot because they were along the *Page 5 
front of the property, making them "primary parking spaces"; that, in order to value the parking spaces, he divided The Kewpee restaurant's average gross sales by its number of parking spaces, seventy-six, to determine the average sale per space; that he estimated the loss of the ten parking spaces would result in reduction of Kewpee's property value in the amount of $171,050 or $213,382; that the higher figure, $213,382, was estimated because the eliminated parking spaces were the primary parking spaces and were worth more; that he estimated the value of the Kewpee property after the taking would be $1,027,200; that the value of Kewpee property before the taking, $1,300,000, minus the value after the taking, $1,027,200, reflects a loss of $272,800. Wilson concluded that the loss in value of the real estate due to the temporary construction easement was $3,800; and, that the total loss in value of the Kewpee property due to the taking would be $276,600.
 {¶ 7} Harrison Shutt, Kewpee's owner and president, testified that loss of ten parking spaces would decrease potential sales; that Kewpee's parking lot was often full; that he made the parking lot large because he wanted more customers; that he estimated the value of the Kewpee property before the taking at $2,500,000; and, that he believes that the value would decrease by $300,000 as a result of the taking, based upon his knowledge of other property sales in the area. *Page 6 
 {¶ 8} Robert Domini, ODOT's real estate appraiser, testified that, in his appraisal, he estimated the fair market value of the Kewpee property before the taking to be $550,000; that he estimated the fair market value of the Kewpee property after the taking to be $538,468; that, consequently, he estimated damages to the residue of the Kewpee property after the taking to be $11,532; and, that he estimated the value of the temporary construction easement to be $1,993. Domini testified that he analyzed the fair market value of the Kewpee property in his appraisal using several methods including a "depreciation in the cost" approach at $630,693; a "sales comparison" approach, comparing the sales of four local non-operating properties and three operating properties, at $525,700; and, an "income approach" at $582,671.
 {¶ 9} Domini continued that he did not think anyone would pay $1,300,000 to purchase the Kewpee property or $130,000 a year to rent the Kewpee property; that it is possible to estimate market rent by using a percentage of gross sales; that any loss of parking spaces could be "cured" by restructuring the parking lot to move the spaces to a different area; and, that restructuring the parking lot would not have any effect on the fair market value of the Kewpee property.
 {¶ 10} On cross-examination, Domini testified that he did not like certain aspects of ODOT's proposed plan to cure the loss of parking spaces; that the *Page 7 
ODOT Code of Conduct for Staff and Fee Appraisers requires appraisers to personally view the interior and exterior of each comparable property; that he did not personally visit one of the comparable restaurants that he discussed in his appraisal report; that the Code of Conduct also requires appraisers to personally sign the appraisal report as the appraiser of record; and, that he did not personally sign one of his appraisal reports, but it was signed by an individual in his office.
 {¶ 11} After the presentation of evidence, but prior to jury deliberations, ODOT objected to the jury instructions and stated on the record that it had submitted an instruction to the trial court, which the trial court had rejected. According to ODOT, the rejected instruction stated, in part "you are not to consider or award compensation or damages for changes, if any, to the value of the business conducted on the property." (Trial Tr., vol. III, pp. 668-669).
 {¶ 12} Thereafter, the jury awarded Kewpee $16,000 as compensation for the property taken, $3,800 as compensation for the temporary easement, and $280,200 for damages to the residual property, for an aggregate $300,000 in damages. On the jury verdict form, the jury handwrote the notation "Plus court costs and legal fees for The Kewpee, Inc."
 {¶ 13} Shortly thereafter, Kewpee filed a motion for an award of attorneys' fees against ODOT, claiming that ODOT had acted in bad faith during the proceedings, and that such an award was consistent with the jury verdict. *Page 8 
 {¶ 14} In November 2007, ODOT moved for judgment notwithstanding the verdict on the issue of court costs and attorneys' fees. ODOT disputed the jury's notation on the verdict form purporting to award court costs and attorneys' fees to Kewpee. ODOT asserted that the jury had no ability to impose court costs or legal fees.
 {¶ 15} Subsequently, the trial court found that the jury violated the instructions given to it in awarding court costs and legal fees to Kewpee. Further, the trial court determined that the only possible basis for Kewpee's recovery of attorneys' fees was the presence of bad faith on ODOT's behalf. Finding that ODOT did not act in bad faith, the trial court overruled Kewpee's motion for attorneys' fees and granted ODOT's judgment notwithstanding the verdict, striking the portion of the judgment indicating "Plus court costs and legal fees for The Kewpee, Inc.," but retaining the $300,000 award.
 {¶ 16} It is from this judgment that ODOT appeals and Kewpee cross-appeals, presenting the following assignments of error and cross-assignment of error, respectively, for our review.
 ODOT's Assignment of Error No. I BECAUSE THE JURY HEARD EVIDENCE OF THE KEWPEE'S GROSS SALES BEFORE THE TAKING AND ITS ANTICIPATED LOSS OF SALES AFTER THE TAKING, THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT REFUSED TO GIVE ODOT'S REQUESTED LIMITING INSTRUCTION TO CAUTION THE JURY TO *Page 9 CONSIDER REAL ESTATE VALUES ONLY AND NOT AWARD DAMAGES FOR ANY CHANGE IN THE VALUE OF THE KEWPEE'S BUSINESS.
 ODOT's Assignment of Error No. II THE TRIAL COURT ERRED BY ALLOWING A LEADING QUESTION THAT WAS DESIGNED TO REHABILITATE THE WITNESS'S "GUESSTIMATION" ABOUT DAMAGES AND THEN COMPOUNDED THE ERROR BY COMMENTING IN A WAY THAT SUGGESTED HOW THE WITNESS SHOULD ANSWER.
 Kewpee's Cross-Assignment of Error THE TRIAL COURT ERRED BY GRANTING APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND BY DENYING APPELLEE'S MOTION FOR AWARD OF ATTORNEY'S FEES AFTER THE JURY HAD UNANIMOUSLY AWARDED APPELLEE "COURT COST [SIC] AND LEGAL FEES" ON THE VERDICT FORM.
 ODOT's Assignment of Error No. I {¶ 17} In its first assignment of error, ODOT contends that the trial court erred in refusing to give its requested limiting instructions to the jury. Specifically, ODOT argues that, because the jury heard evidence of Kewpee's gross sales before the taking and its anticipated loss after the taking, the trial court should have given ODOT's requested instruction cautioning the jury to consider real estate values only and not to award damages for any change in the value of Kewpee's business. *Page 10 
 {¶ 18} "When reviewing a trial court's jury instruction, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction constituted an abuse of discretion under the facts and circumstances of the case." Motorist Mut.Ins. Co. v. Hohman, 3d Dist. No. 17-06-08, 2007-Ohio-108, ¶ 26, citingState v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id Additionally, "jury instructions are reviewed in their entirety to determine if they contain prejudicial error." Motorist Mut., 2007-Ohio-108, at ¶ 26, citing State v. Porter (1968), 14 Ohio St.2d 10.
 {¶ 19} A trial court may refuse to give a requested instruction which, although technically correct, "would probably tend to confuse the jury rather than give them its correct meaning" due to its particular form or wording. Wharton v. Long (1934), 18 Ohio Law Abs. 147. See, also,Scott v. Hy-Grade Food Prod. Corp. (1936), 131 Ohio St. 225;Fowerbaugh v. Univ. Hosp. (1997), 118 Ohio App.3d 402; Great Atlantic Pacific Tea Co. v. Redmond (1929), 7 Ohio Law Abs. 645. *Page 11 
 {¶ 20} Evid. R. 105 governs limited admissibility and provides that, "[w]hen evidence which is admissible * * * for one purpose but not admissible * * * for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." This rule "`imposes a mandatory duty upon the court'" to give such a limiting instruction upon request.State v. Valentine, 2d Dist. No. 13192, 1992 WL 137101, quoting Weissenberger, Ohio Evidence (2005) 36, Section 105.2. Cf. State v.Barton (1991), 71 Ohio App.3d 455, 460 (holding that, regarding Evid. R. 404(B), a limiting instruction "must be given" upon timely request);Fantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601, 609
(holding that the word "shall" is mandatory).
 {¶ 21} Here, ODOT submitted jury instructions stating, in pertinent part:
 There is a difference between the value of property and the value of a business conducted on the property. Your duty as a jury is to determine compensation for the property taken and damages to the value of the property remaining. You are not to consider or award compensation or damages for changes, if any, to the value of the business conducted on the property.
(Plaintiff's Proposed Jury Instructions, p. 2).
 {¶ 22} Upon reviewing the jury instructions in their entirety, we find that ODOT suffered no prejudicial error. Although the trial court did not give ODOT's requested instruction, the trial court instructed the jury that "damages are the loss in value of the remaining property, or residue, because of its severance from the *Page 12 
take — property taken" (trial tr., vol. III, p. 661), and "if the remaining land is less valuable because of the appropriation, then you must consider such injury and determine the amount of such decrease in the fair market value caused by the appropriation." (Trial Tr., vol. III, p. 662). Additionally, the trial court instructed the jury that, on the verdict form, it should enter the amount it found "to be the fair market value of the land taken" as well as the amount of any damages "to the residue of the land." (Trial Tr., vol. III, pp. 664-665). We find that, in considering the entirety of the instructions, it was clear that the jury was only to consider damages to the Kewpee property and not to award damages for any change in value to the business operated on the Kewpee property.
 {¶ 23} Additionally, we note that the trial court may have rejected ODOT's requested instruction due to its specific wording instead of its intended purpose. ODOT's statement that the jury was "not to consider or award compensation or damages for changes, if any, to the value of the business conducted on the property" may have confused the jury about whether it could consider the value of the business conducted on the property in determining the value of the real estate and, thus, whether it could consider Wilson's appraisal of the property using the income approach. *Page 13 
 {¶ 24} Accordingly, as the trial court was within its discretion to reject the instruction and there was no prejudicial error, we overrule ODOT's first assignment of error.
 ODOT's Assignment of Error No. II {¶ 25} In its second assignment of error, ODOT argues that the trial court erred in permitting a leading question at trial designed to rehabilitate a witness's statement and then compounded the error by commenting on how the witness should answer. Specifically, ODOT complains about the following dialogue that took place during Kewpee's direct examination of Harrison Shutt during the trial:
 [KEWPEE'S COUNSEL:] * * * After the take by ODOT and this loss of parking that you've described, what do you now believe the property is worth?
 [SHUTT:] Well, as I say, in my own guesstimation and what I have done that [sic] we would be losing somewhere around $300,000.00 as to the value of the property. * * *
 [KEWPEE'S COUNSEL:] And when you refer to, I think you used the phrase guesstimation, that the property is worth $300,000.00 less in the after, while you call it a guesstimation is that based upon your 50 years of being in business in Lima and your 30 years at this site?
 [ODOT'S COUNSEL:] Objection. Leading.
 [The Court:] Yes, it is. But he'll just rephrase it. Overruled.
 [KEWPEE'S COUNSEL]: When you say guesstimation, Mr. Shutt, what is that actually based upon?
 [SHUTT]: Well, that's just a term I'm using. I didn't realize it's probably a poor term. Based upon other property sales in the area, what I know other restaurants have gone for, both here and in other cities. People have a tendency or I have a tendency anyway to value a lot what we have here, what we've done there. And I think that's what the property's worth. *Page 14 
(Trial Tr., vol. II, pp. 301-302). ODOT contends that this leading question was inappropriate because it instructed the witness how to support his speculative testimony. Further, ODOT contends that the trial court's statement that "he'll just rephrase it" could have been construed by the jury as referring to the witness's answer, instead of counsel's inquiry.
 {¶ 26} A leading question suggests an answer or instructs a witness "how to answer or puts into his mouth words to be echoed back."State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 190. Evid. R. 611(C) states, in pertinent part, that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony[.] * * *" However, despite this limitation, "`[t]he allowing or refusing of leading questions in the examination of a witness must very largely be subject to the control of the court, in the exercise of a sound discretion.'" Ramage v. Central Ohio EmergencyServ., Inc. (1992), 64 Ohio St.3d 97, 111, quoting Seley v. G.D. Searle Co. (1981), 67 Ohio St.2d 192, 204. A trial court's ruling on the issue will stand absent an abuse of discretion. Id.; see, also,Lambert v. Shearer (1992), 84 Ohio App.3d 266, 275. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore, 5 Ohio St.3d at 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. *Page 15 
 {¶ 27} Here, we find that, while the trial court should have sustained ODOT's question as leading, any error was harmless. Had the trial court sustained the error, Kewpee's counsel would have simply rephrased the question and elicited the same testimony from the witness. Additionally, we fail to see how the trial court's comment that "he'll just rephrase it" compounded the error or was harmful.
 {¶ 28} Accordingly, we overrule ODOT's second assignment of error.
 Kewpee's Cross-Assignment of Error {¶ 29} In its sole cross-assignment of error, Kewpee contends that the trial court erred by granting ODOT's motion for judgment notwithstanding the verdict concerning jury-awarded attorneys' fees and court costs because evidence was presented supporting a finding of bad faith. Specifically, Kewpee claims that bad faith is apparent because ODOT undervalued the property and claimed there was no damage to the residue; because ODOT refused to consider offering additional compensation prior to trial despite having knowledge of substantial problems with its own appraisal, such as that ODOT's appraiser twice violated the ODOT code of conduct; and, because ODOT failed to make any efforts to settle the case prior to trial.
 {¶ 30} Appellate courts review a trial court's ruling on a motion for judgment notwithstanding the verdict de novo. Natl. City Bank v.Rhoades, *Page 16 150 Ohio App.3d 75, 2002-Ohio-6083, ¶ 53. In ruling on a motion for judgment notwithstanding the verdict, "the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." Posin v. A.B.C. Motor Court Hotel, Inc.
(1976), 45 Ohio St.2d 271, 275.
 {¶ 31} Additionally, "[i]n Ohio, the general rule is that[,] absent a statute allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed acted in bad faith." State ex rel. Maloney v.Sherlock, 100 Ohio St.3d 77, 2003-Ohio-5058, ¶ 55. "Bad faith has been defined as * * * a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" (citations omitted.) Miller v. Miller Miller Accountants, Inc., 5th Dist. No. 2002-CA-0068, 2003-Ohio-5913, ¶ 38, quoting Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272,276. Bad faith is more than negligent conduct. Wasserman v. BuckeyeUnion Cas. Co (1972), 32 Ohio St.2d 69.
 {¶ 32} Kewpee first argues that bad faith is apparent from ODOT's claim that there was no damage to the residue of the property and because ODOT's *Page 17 
appraisal and original offer was much lower than the damages awarded by the jury.
 {¶ 33} Here, ODOT's expert appraiser presented evidence that, in his opinion, there was no damage to the residue of the property. Further, ODOT's appraiser presented evidence to support his estimate of damages. We agree with the trial court's finding that ODOT's estimate of damages, which was supported by its expert testimony, is not evidence of bad faith, even though the jury chose to believe Kewpee's expert and award a much higher amount.
 {¶ 34} Next, Kewpee contends that ODOT refused to consider offering additional compensation prior to trial despite having knowledge of substantial problems with its own appraisal, such as that ODOT's appraiser twice violated the ODOT code of conduct. Specifically, Kewpee claims that ODOT's expert did not personally sign an appraisal, failed to personally visit comparable properties, and stated several weeks before trial that he did not "like" the proposed cure set forth in his appraisal. We disagree that these issues constituted "substantial problems" with ODOT's appraisal and, again, note that ODOT's appraisal was supported by expert testimony. None of these issues demonstrates the "moral obliquity" required for bad faith as contemplated by the Supreme Court of Ohio in Hoskins and Wasserman. *Page 18 
 {¶ 35} Finally, Kewpee contends that ODOT failed to make any efforts to settle the case prior to trial, evincing bad faith. However, we agree with the trial court's finding that this does not demonstrate bad faith on ODOT's part; as the trial court found, "there was an honest difference of opinion [and t]his is the reason we have jury trials." (Order for Judgment Notwithstanding the Verdict and Overruling Motion for Attorney Fees, p. 3).
 {¶ 36} Accordingly, we overrule Kewpee's cross-assignment of error.
 {¶ 37} Having found no error prejudicial to the appellant or cross-appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and PRESTON, J., concur. *Page 1