## BOARD OF TRUSTEES OF SINCLAIR COMMUNITY COLLEGE DISTRICT, Appellee,

v.

## FARRA et al., Appellants.

[Cite as *Bd. of Trustees of Sinclair Community College Dist. v. Farra*, 186 Ohio App.3d 662, 2010-Ohio-1130.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23340.

Decided March 19, 2010.

Richard Cordray, Attorney General, and Lauren Ross, Assistant Attorney General, for appellee.

Baver and Bookwalter, John M. Ebersole, and Joshua A. Liles, for appellants.

FAIN, Judge.

{¶ 1} Defendant-appellants, Donald and Sharon Farra, appeal from a judgment denying their motion for attorney fees that were allegedly incurred as a result of, and in the course of defending, an appropriation action between the Farras and the Board of Trustees of Sinclair Community College District ("Sinclair"). The Farras contend that attorney fees are appropriate under Section 19, Article I of the Ohio Constitution, or pursuant to the amended version of R.C. 163.21(C)(1), which became effective on October 10, 2007.

{¶ 2} We conclude that the trial court did not err in refusing to award attorney fees and costs. Ohio follows the rule that attorney fees are not recoverable in the absence of a statute, an enforceable contract, or bad faith. Prior to the amendments to R.C. Chapter 163, R.C. 163.21(B)(1)(b) allowed attorney fees to be recovered in appropriation actions upon a finding that an agency is not entitled to appropriate a particular property. R.C. 163.21(C)(1), as amended, allows recov-

ery when an award of compensation is more than 125 percent of the agency's good-faith offer. The General Assembly specifically indicated that the amendments do not apply to cases pending on the effective date of the amendments. Because the case before us was pending on the effective date of the amendments to R.C. Chapter 163, R.C. 163.21(C)(1), as amended, does not apply. Attorney fees are also not constitutionally mandated under existing law. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 3} In March 2006, Sinclair filed an appropriation action against Donald and Sharon Farra, after Sinclair had unsuccessfully attempted to purchase three parcels of property that the Farras owned in what is called the Bank Street area of Dayton, Ohio. Previously, in June 2004, Sinclair had passed a resolution indicating that it needed to appropriate the Farras' land and several other parcels in the Bank Street area, for purposes of future expansion and parking.

{¶ 4} Negotiations between Sinclair and the Farras have been protracted and acrimonious. The record indicates that when Sinclair's counsel sent Mr. Farra courteous letters offering to purchase the property, Mr. Farra responded with personal insults, threats to spend huge sums of money in litigation, and an attitude that showed no interest in negotiating. After unsuccessfully attempting to negotiate, Sinclair filed two appropriation actions against the Farras. The actions were then consolidated and considered as part of the same proceeding.

{¶ 5} The pleadings in the appropriation actions are contentious and contain disparaging remarks by *both* sides that do no credit to the parties or to the legal profession. The visiting judge who presided over the compensation trial also noted that he had observed an "occasionally somewhat less than professional demeanor of Sinclair's counsel toward the defendants and their counsel." The judge noted that this conduct, while not sufficient to constitute bad faith, falls within the category of "overzealous representation."

{¶ 6} Two matters were contested in the trial court: (1) whether the appropriation is a necessity and (2) if so, what compensation should be paid for the property. After hearing testimony, a magistrate concluded that the appropriation is a necessity. In January 2008, the trial court overruled the Farras' objections and adopted the decision of the magistrate. The issue of compensation was then tried to a jury, which awarded the Farras $366,400 in compensation for their properties. Sinclair appealed the amount of compensation, and the Farras cross-appealed the judgment that the taking was necessary. On February 19, 2010, we affirmed the trial court's judgment. *Bd. of Trustees of Sinclair Community College Dist. v. Farra,* Montgomery App. No. 22886, 2010-Ohio-568, 2010 WL 597098.

{¶ 7} During the course of the appeal, the Farras filed a motion in the trial court requesting approximately $172,708 in attorney fees and expenses. Their request was based on Section 19, Article I of the Ohio Constitution, R.C. 163.21(C)(1), and Sinclair's alleged bad faith. The trial court overruled the motion for attorney fees, concluding that the attorney-fees provision in R.C. 163.21(C) does not apply to appropriation proceedings filed prior to October 10, 2007. The trial court also rejected the contention that attorney fees are constitutionally required. Finally, the court held that Sinclair had not acted in bad faith. The Farras appeal from the judgment of the trial court.

## II

{¶ 8} The Farras' sole assignment of error is as follows:

{¶ 9} "The trial court erred when it determined that the defendants were not entitled to attorney fees because of the Ohio Constitution and R.C. 163.21."

{¶ 10} Under this assignment of error, the Farras contend that the trial court erred in determining that they are not entitled to attorney fees under the Ohio Constitution and R.C. 163.21. The Farras do not challenge the trial court's holding regarding alleged bad faith. Accordingly, we will not consider that portion of the trial court's decision.

{¶ 11} The Farras' first argument is that attorney fees should be awarded in appropriation cases due to the admonishment in *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, that property rights are to be held inviolate and that owners should be compensated for every injury resulting from deprivation of their property. We disagree that an award of attorney fees is constitutionally mandated.

{¶ 12} The Ohio Supreme Court has stressed that "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. Exceptions do exist to this rule. For example, "[a]ttorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees, * * * or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant * * *." Id. Accord *Proctor, Dir., Ohio Dept. of Transp. v. Kewpee, Inc.,* Allen App. No. 1–08–03, 2008-Ohio-5197, 2008 WL 4455600, ¶ 31 (following the general rule in Ohio for awards of attorney fees and rejecting fee award in appropriation action, when the Ohio Department of Transportation ("ODOT") did not act in bad faith).

{¶ 13} In *Kewpee,* ODOT presented an estimate of damages to the appropriated property of $11,532, but the jury verdict was much higher—$280,200. Id. at ¶ 8, 12. The Third District Court of Appeals found no evidence of bad faith on ODOT's part, despite the disparity in the amounts and ODOT's awareness of problems with its appraisal. Id. at ¶ 33–34. The Third District also found no bad faith in ODOT's failure to make any efforts to settle the case before trial. In particular, the Third District agreed with the trial court's finding that "there was an honest difference of opinion [and t]his is the reason we have jury trials." Id. at ¶ 35.

{¶ 14} Contrary to the Farras' contention, the Ohio Supreme Court decision in *Norwood* does not alter these established rules governing attorney-fees awards. In fact, *Norwood* does not even mention attorney fees. In *Norwood,* the Ohio Supreme Court considered two issues:

{¶ 15} "[T]he constitutionality of a municipality's taking of an individual's property by eminent domain and transferring the property to a private entity for redevelopment * * * [and] the constitutionality of the provision in R.C. 163.19 prohibiting a court from enjoining the taking and using of property appropriated by the government and transferred to a private party for redevelopment, after the compensation for the property has been deposited with the court but prior to appellate review of the taking." 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 1–2.

{¶ 16} In its opinion, the Ohio Supreme Court discussed the respective property rights of both individuals and the state. The court noted:

{¶ 17} "There is an inherent tension between the individual's right to possess and preserve property and the state's competing interests in taking it for the communal good. Mindful of that friction and the potential for misuse of the eminent-domain power, James Madison's proposed draft of the Takings Clause included two equitable limitations on its use that were eventually incorporated into the Fifth Amendment: the 'public use' requirement and the 'just compensation' rule. * * * The amendment confirms the sovereign's authority to take, but conditions the exercise of that authority upon satisfaction of two conjunctive standards: that the taking is for a 'public use' and that 'just compensation' for the taking is given to the property owner." (Footnote omitted.) Id. at ¶ 40.

{¶ 18} Ultimately, after discussing the tension between private rights and public uses, the Ohio Supreme Court concluded in *Norwood:*

{¶ 19} "[A]n economic or financial benefit alone is insufficient to satisfy the public-use requirement of Section 19, Article I. In light of that holding, any taking based solely on financial gain is void as a matter of law, and the courts owe no deference to a legislative finding that the proposed taking will provide

financial benefit to a community." 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 80.

{¶ 20} In *Norwood,* the Ohio Supreme Court also concluded that R.C. 163.19 violates the separation-of-powers doctrine insofar as it prohibits injunctions against taking and using appropriated property pending appeal. Id. at ¶ 125. The court was able, however, to sever the unconstitutional part of the statute. Id. at ¶ 126–127.

{¶ 21} In the portion of the opinion that discusses general concepts of eminent domain, the Ohio Supreme Court quotes the language that the Farras refer to in their brief—that "persons deprived of their property will be compensated for 'every injury resulting from'" the act of taking. Id. at ¶ 41, quoting Section 19, Article I of the Ohio Constitution. However, this quotation does not refer to attorney fees. Instead, in a footnote to the quotation, the Ohio Supreme Court explains:

{¶ 22} "In eminent-domain cases, 'just compensation' is that compensation that places the individual in 'as good a position pecuniarily as if his property had not been taken,' to be 'made whole,' but no more. * * * Such compensation typically is measured by the fair market value of the physical property at the time of the taking, * * * and does not reflect the more elusive, metaphysical value that the property may have to its owner." 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 41, fn. 9.

{¶ 23} This is consistent with the general rule of damages in tort and contracts cases: the aggrieved party is entitled to be made whole. Generally speaking, attorney fees are not awarded as damages.

{¶ 24} Accordingly, *Norwood* does not provide support for the contention that the Ohio Supreme Court intended to alter the traditional common-law rule regarding awards of attorney fees. The Ohio Supreme Court did note in *Norwood* that as a result of the holding in *Kelo v. New London* (2005), 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439, the Ohio General Assembly had imposed a moratorium on the taking of private property that is not within a blighted area, which ultimately results in ownership of the property being vested in another private person. *Norwood,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 6. The Ohio Supreme Court further noted that the General Assembly had created a task force to study the use of eminent domain in such situations. Id.

{¶ 25} The General Assembly subsequently enacted amendments to R.C. Chapter 163, which took effect on October 10, 2007. One of the changes resulting from the amendments is contained in R.C. 163.21, which is the section relied upon by the Farras for their claim to attorney fees. Prior to the amendments, R.C. 163.21(B)(1)(b) provided for awards of attorney fees in appropriation actions only

when the court determines that an agency is not entitled to appropriate a particular property.

{¶ 26} As amended, R.C. 163.21(C)(1) now provides:

{¶ 27} "Except as otherwise provided in division (C)(2) or (3) of this section and subject to division (C)(5) of this section, when an agency appropriates property and the final award of compensation is greater than one hundred twenty-five per cent of the agency's good faith offer for the property or, if before commencing the appropriation proceeding the agency made a revised offer based on conditions indigenous to the property that could not reasonably have been discovered at the time of the good faith offer, one hundred twenty-five per cent of the revised offer, the court shall enter judgment in favor of the owner, in amounts the court considers just, for all costs and expenses, including attorney's and appraisal fees, that the owner actually incurred."

{¶ 28} The Farras contend that they are entitled to attorney fees under R.C. 163.21(C)(1), because the jury award of $366,400 is more than 218 percent of Sinclair's highest offer of $168,000. The trial court rejected the Farras' claim, because the Ohio General Assembly explicitly provided that the amendments to R.C. Chapter 163 do not apply to appropriations that were pending on the date the amendments became effective.

{¶ 29} The amendments to R.C. 163.21(C), as well as other amendments to R.C. Chapter 163, are contained in Section 1 of Am.Sub.S.B. No. 7, which became effective on October 10, 2007. Section 2 of Am.Sub.S.B. No. 7, which became effective at the same time, repeals existing R.C. 163.21, as well as other sections in R.C. Chapter 163 that relate to appropriation of property. Section 5 of Am.Sub.S.B. No. 7 then specifically states as follows:

{¶ 30} "*Sections 1 and 2 of this act do not apply to appropriation proceedings pending on the effective date of this act.* This section is not intended to indicate that such appropriation proceedings do not have to comply with the constitutional requirements set forth in *City of Norwood v. Horney* (2006), 110 Ohio St.3d 353[, 2006-Ohio-3799, 853 N.E.2d 1115]." (Emphasis added).

{¶ 31} Based on the second sentence of Section 5, and *Norwood's* emphasis on "just compensation" and "compensation for every injury," the Farras contend that attorney fees are constitutionally required. The trial court rejected this argument, because *Norwood* did not discuss the issue of whether property owners are entitled to attorney fees, or the conditions, if any, under which property owners might be entitled to attorney fees. We have previously indicated our agreement with the trial court's interpretation of *Norwood.*

{¶ 32} We also note that the only constitutional concerns or requirements expressed in *Norwood* are in the form of dicta in a footnote, in which the Ohio

Supreme Court discusses evidentiary presumptions in the existing version of R.C. 163.09(B) and speculates whether the evidentiary presumptions are constitutional. See *Norwood,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 136, fn. 16. Again, these concerns have nothing to do with attorney fees. Accordingly, the comments of the Ohio General Assembly in the second sentence of Section 5 of Am.Sub.S.B. No. 7 have no bearing on the issue of attorney fees and do not provide a basis for disregarding the clear language in the first sentence of Section 5, which explicitly indicates that the amendments to R.C. Chapter 163, including the amendments to R.C. 163.21, do not apply to appropriation actions that were pending on October 10, 2007.

{¶ 33} The appropriation action in the case before us was filed in March 2006 and was pending on the effective date of the amendments to R.C. Chapter 163. Accordingly, the provision for attorney fees and costs in R.C. 163.21(C)(1) does not apply, and the trial court did not err in rejecting the Farras' request for attorney fees and costs.

{¶ 34} In responding to the Farras' brief, Sinclair also contends that the Farras would not be entitled to attorney fees and costs even if R.C. 163.21(C)(1) applies. Sinclair's argument is based on R.C. 163.21(C)(5)(b), which states:

{¶ 35} "The court shall not enter judgment for costs and expenses, including attorney's fees and appraisal fees, under division (C) of this section unless not less than fifty days prior to the date initially designated by the court for trial the owner provided the agency with an appraisal or summary appraisal of the property being appropriated or with the owner's sworn statement setting forth the value of the property and an explanation of how the owner arrived at that value."

{¶ 36} According to Sinclair, the Farras failed to provide the signed appraisal summaries of their expert, Robert Harris, until approximately March 26, 2008, which was less than 50 days prior to trial. The Farras respond by noting that Sinclair possessed appraisals rendered by an expert, E. Pike Levine, well in advance of trial. During the debate in the trial court on the attorney-fees issue, Sinclair acknowledged receiving Levine's appraisals in October 2007. Sinclair contended in the motion that Levine's opinion could not be trusted, due to the number of mistakes it contained.

{¶ 37} We need not address these matters in detail, because the Farras are not entitled to relief under the amended version of R.C. 163.21(C)(1). As an aside, we note that the amended statute refers to the "date initially designated by the court for trial." In the case before us, the date initially designated by the court for trial is August 20, 2007, and no appraisals had apparently been furnished prior to that time. The fact that the trial was rescheduled, and ultimately occurred in May 2008, is irrelevant, at least based on the current wording of the

statute. Nevertheless, we need not rely on this point, because R.C. 163.21(C)(1) does not apply. Under the statute and case law that applied when the appropriation action was filed, attorney fees may be awarded only when a court finds that an agency is not entitled to appropriate the property, or when the agency has acted in bad faith. Neither of these circumstances applies in the case before us, and the Farras are not entitled to recover attorney fees and costs.

{¶ 38} The Farras' sole assignment of error is overruled.

### III

{¶ 39} The Farras' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and GRADY, JJ., concur.